**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ERNEST ANDRADE, on behalf of ANTHONY GOODMAN, a minor,<br><br>        Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA and DOES 1-25,<br><br>        Defendants. | No. 05-3240-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is Plaintiff Ernest Andrade's ("Plaintiff") motion for partial summary judgment. (Dkt. #68). After reviewing the pleadings and holding oral argument on August 27, 2008, the Court issues the following order.

**I.     BACKGROUND**

On October 13, 2005, Plaintiff, as legal guardian of his grandson, Anthony Goodman, brought a complaint against Defendant United States of America ("Defendant" or "United States") under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. (Dkt. #1). On September 8, 2006, Defendant moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction; the Court subsequently granted Defendant's motion on February 6, 2007, finding that Plaintiff had failed to name the appropriate entity in order to properly assert claims of negligence against the United States. (Dkt. #7). However, the Court also granted Plaintiff leave to amend his complaint

to name the appropriate entity to state an actionable claim under the FTCA. (Id.). Pursuant to the Court's order, Plaintiff filed a revised amended complaint on February 16, 2007. (Dkt.#22, Amended Complaint ("Amend. Compl.")).

Plaintiff alleges that in March 2004, Child Protective Services ("CPS") of the Colorado River Indian Tribe ("Tribe") placed two minor children in his custody as a foster parent. (Amended Complaint ("Amend. Compl.") ¶ 10). Thereafter, the two minors allegedly sexually assaulted Anthony Goodman, who "suffered serious and permanent bodily injuries," as well as "pain, suffering, aggravating, inconvenience, mental and emotional distress . . ." that continues to this day. (Amend. Compl. ¶¶ 22, 23). Plaintiff contends that the minors should have been under the care, control, and supervision of the Tribe's Social Services Department ("Social Services"), and that at the time the two minors were placed with Plaintiff by CPS, "Social Services knew, or should have known, that the minors had a history and propensity of acting out sexually," and thus "it was foreseeable that these minors would sexually assault another minor." (Amend Compl. ¶¶ 10-12). Further, Plaintiff alleges that Social Services knew or should have known that Anthony Goodman, a minor, resided with Plaintiff, and thus would have been exposed to the two minors, but nonetheless failed to warn Plaintiff that the minors had a history and propensity of acting out sexually. (Amend. Compl. ¶¶ 13-14).

Plaintiff contends that although "Social Services . . . had a duty to act safely and reasonably in placing [the two minors] in the Andrade home" and "to warn [Plaintiff] of [the minors] history and propensity of acting out sexually," Social Services breached that duty by allowing CPS to negligently place the two minors with Plaintiff. (Amend Compl. ¶¶ 15-16). Plaintiff also contends that Social Services failed to follow its own "policies and procedures . . . that would have prevented the [two] foster children from being placed in the Andrade home and would have prevented the molestation of Anthony Goodman." (Amend. Compl. ¶¶ 17-18).

- 2 -

In his amended complaint, Plaintiff contends that the Bureau of Indian Affairs ("BIA") of the Department of the Interior entered into a contract with the Tribe, under which "the BIA agreed to provide monies for law enforcement and investigative services to the Tribe and to monitor the Tribe's use of said funds in accordance with the Contract and applicable law." (Amend. Compl. ¶ 7). Plaintiff contends that "[b]y the terms of the Contract, for the purposes of the [FTCA], the Tribe and its employees are deemed to be employees of the Federal government while performing work under this Contract." (Amend. Compl. ¶ 9). Defendant denies that the United States may be held liable under the FTCA. (Dkt. #3, Amended Answer). On January 16, 2008, Plaintiff filed the instant motion for summary judgment in order to resolve the issue of whether the United States may be held liable under the FTCA for the negligent acts of CPS. (Dkt. #68).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact; the moving party must present the basis for its summary judgment motion and identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001).

A material fact is one that might affect the outcome of the case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, in order to preclude summary judgment, a dispute about a material fact must also be "genuine," such that a reasonable jury could find in favor of the non-moving party. Id.; Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995). In determining whether the moving party has met its burden, the Court views the evidence in the light most favorable to the nonmovant. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th

1  Cir. 1995).  The Court may not make credibility determinations or weigh conflicting
2  evidence.  <u>Musick v. Burke</u>, 913 F.2d 1390, 1394 (9th Cir. 1990).  Further, the Court must
3  draw all reasonable inferences in favor of the nonmovant.  <u>Gibson v. County of Washoe</u>,
4  290 F.3d 1175, 1180 (9th Cir. 2002).

5    If the moving party meets its burden with a properly supported motion for
6  summary judgment, then the burden shifts to the non-moving party to present specific
7  facts that show there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); <u>Matsushia Elec.</u>
8  <u>Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986).  The nonmovant may not rest on
9  bare allegations or denials in his pleading, but must set forth specific facts, by affidavit or
10 as otherwise provided by Rule 56, demonstrating a genuine issue for trial.  Fed.R.Civ.P.
11 56(e); <u>Anderson</u>, 447 U.S. at 248-49.  Conclusory allegations, unsupported by factual
12 material, are insufficient to defeat a motion for summary judgment.  <u>Taylor v. List</u>, 880
13 F.2d 1040, 1045 (9th Cir. 1989).

14   In sum, the question on motion for summary judgment is whether the evidence
15 "presents a sufficient disagreement to require submission to a jury or whether it is so one-
16 sided that one party must prevail as a matter of law."  <u>Anderson</u>, 447 U.S. at 521-52.  A
17 district court is not required to probe the record in search of a genuine issue of triable fact.
18 <u>Keenan v. Allen</u>, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmovant has the burden of
19 identifying with reasonable particularity the evidence that precludes summary judgment.
20 <u>Id.</u>; <u>see</u> <u>Carmen v. San Francisco Unified School District</u>, 237 F.3d 1026, 1028-29 (9th
21 Cir. 2001) (even if there is evidence in the record that creates a genuine issue of material
22 fact, a district court may grant summary judgment if the opposing party's papers do not
23 include or conveniently refer to that evidence).  The mere existence of a scintilla of
24 evidence supporting the nonmovant's petition is insufficient; there must be evidence from
25 which a trier of fact could reasonably find for the non-movant.  <u>Id.</u> at 252; <u>see</u> <u>Matsushita</u>
26 <u>Elec.</u>, 475 U.S. at 586 (nonmovant's showing of "some metaphysical doubt" as to material
27 facts insufficient to defeat summary judgment).

28 **III.    DISCUSSION**

- 4 -

1  Plaintiff requests that the Court find that the United States is liable under the
2  FTCA for the alleged negligent acts of CPS because "[w]ithout a question CPS worked at
3  the order and direction of Social Services" and "Social Services would tell CPS where
4  they could place the children. (Dkt. #68, pp. 5, 7). Defendant contends that the United
5  States may not be held liable under the FTCA for the alleged negligent acts of CPS
6  because CPS and its employees are not deemed employees of the Federal Government for
7  purposes of the FTCA. (Dkt. #72, p.3). Defendant also contends that Plaintiff should be
8  judicially estopped from arguing that the United States is liable for the acts of CPS and its
9  employees. (Dkt. #72, p.5).

10 **A.     Judicial Estoppel**

11 "Judicial estoppel [is] sometimes also known as the doctrine of preclusion of
12 inconsistent positions." Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600
13 (9th Cir. 1996). It is a doctrine that "precludes a party from gaining an advantage by
14 taking one position, and then seeking a second advantage by taking an incompatible
15 position." Id.; Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990) (judicial estoppel is
16 intended to preclude parties from "playing fast and loose with the courts"). In addition,
17 "[j]udicial estoppel is a discretionary doctrine." Interstate Fire & Cas. Co. v.
18 Underwriters at Lloyd's of London, 139 F.3d 1234, 1239 (9th Cir. 1998) (citing Yanez v.
19 United States, 989 F.2d 323, 326 (9th Cir. 1993)).

20 Defendant contends that Plaintiff should be judicially estopped from contending
21 that the United States is liable for the negligent acts of CPS employees because that
22 position is allegedly inconsistent with Plaintiff's previous statement in his response to
23 Defendant's motion to dismiss that "Plaintiff does not dispute that employees of the CPS
24 are not employees within the meaning of the FTCA." (Dkt. #17, p.2). Indeed, in granting
25 Defendant's motion to dismiss, the Court found that "dismissal of Plaintiff's [original]
26 Complaint [was] warranted as there [was] no dispute that CRIT CPS, the identified CRIT
27 entity in Plaintiff's Complaint, is not an employee of the United States." (Dkt. #19, p.5).
28

- 5 -

1  As such, the Court then allowed Plaintiff to amend his complaint to name Social Services
2  as the appropriate CRIT entity. (Dkt. #17, pp. 7-8).
3  Defendant contends that Plaintiff's current allegations are inconsistent with his
4  previous concession that CPS employees are not employees within the meaning of the
5  FTCA. However, Plaintiff does not now simply allege that CPS and its employees should
6  be considered federal employees under the FTCA. Instead, Plaintiff contends that
7  because it is undisputed that Social Services and its employees are considered federal
8  employees under the FTCA, and because CPS employees allegedly acted as de facto
9  employees for Social Services, Plaintiff should be allowed to hold the United States liable
10 for the alleged negligent acts of those CPS employees. The Court will narrowly construe
11 Plaintiff's previous concession that CPS employees are not federal employees under the
12 FTCA to mean that CPS and its employees, in general, are not considered federal
13 employees under the FTCA. The Court did not consider in its previous order whether
14 there were particular circumstances under which certain CPS employees could be deemed
15 federal employees for purposes of the FTCA. In addition, as the question presented is a
16 legal question, the Court finds that Defendant has not demonstrated sufficient prejudice to
17 warrant judicial estoppel. The Court refuses to exercise its discretion to judicially estop
18 Plaintiff from asserting his current position in the instant motion for summary judgment.

### B. Liability Under the FTCA

It is well known that the FTCA is only a limited waiver of the United States's sovereign immunity. 28 U.S.C. § 1346(b)(1). The FTCA provides, in pertinent part, for:

> civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). It is the exclusive remedy for torts committed by federal employees during the course and scope of their employment. 28 U.S.C. § 2679(b)(1); see Brandes v. United States, 783 F.2d 895, 896 (9th Cir. 1986) ("The FTCA does not,

1  however, entirely waive the sovereign immunity of the United States: the federal
2  government may only be held liable for damages caused by the negligent or wrongful act
3  or omission of a government employee."); see also United States v. Orleans, 425 U.S. 807
4  (1971) (the FTCA only extends to government employees; it was "never intended . . . to
5  reach employees or agents of all federally funded programs that confer benefits on
6  people). Whether an individual is a government employee for purposes of the FTCA is a
7  question of federal law. Brandes, 783 F.2d at 896.

8        For purposes of the FTCA, an "employee of the Government" includes "persons
9  acting on behalf of a federal agency in an official capacity, temporarily or permanently in
10 the service of the United States, whether with or without compensation." 28 U.S.C. §
11 2671. The phrase "acting on behalf" was designed "to cover special situations such as the
12 'dollar-a-year' man who is in the service of the Government without pay, or an employee
13 of another employer who is placed under direct supervision of a federal agency pursuant
14 to contract or other arrangement." Logue v. United States, 412 U.S. 521, 531 (1973).

15       The FTCA does not cover the acts of independent contractors; generally, the
16 United States may not be held liable for employees of a party with whom it contracts for a
17 specified performance. 28 U.S.C. § 2671; Logue, 412 U.S. at 526-27. However, the
18 FTCA should nonetheless be applied with an eye to general agency law rather than to the
19 formalities of employment contracts. See Brandes, 783 F.2d at 897 ("Agency law is still
20 proper law to use when determine that one is *either* an employee or an independent
21 contractor for FTCA purposes.") (emphasis in original); see also Logue, 412 U.S. at 528
22 (critical element in distinguishing an agency from a contractor is the power of the Federal
23 Government "to control the detailed physical performance of the contractor").

24       The Indian Self Determination and Education Assistance Act of 1975
25 ("ISDEAA"), Pub.L. No. 93-638, 88 Stat. 2203 (1975) (codified as amended principally
26 at 25 U.S.C. § 450 *et seq.*), expands the United States's liability under the FTCA to
27 employees working pursuant to "self-determination contracts" (also known as '638
28 contracts) entered into by Indian tribes or tribal organizations and the Federal

- 7 -

1  Government. Demontiney v. U.S. ex rel. Dept. of Interior, Bureau of Indian Affairs, 255
2  F.3d 801, 805 (9th Cir. 2001). A "self-determination contract" is a contract "between a
3  tribal organization and the [Federal Government] for the planning, conduct and
4  administration of programs or services which are otherwise provided to Indian tribes and
5  their members pursuant to Federal law." 25 U.S.C. § 450(b)(j). "Congress enacted the
6  ISDEAA to encourage Indian self-determination and tribal control over administration of
7  federal programs for the benefit of Indians, by authorizing self-determination contracts
8  between the United States, through the Secretaries of the Interior and of Health and
9  Human Services, and Indian tribes." Id. at 806. In addition, section 314 of the 1990
10 amendments to the ISDEAA provides, in pertinent part:

> With respect to claims resulting from the performance of functions . . . under a contract, grant agreement, or cooperative agreement authorized by the Indian Self-Determination and Education Assistance Act . . . an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior . . . while carrying out any such contract or agreement and its employees are deemed employees of the Bureau . . . while acting within the scope of their employment in carrying out the contract or agreement.

Pub.L. No. 101-512, Title III, § 314, 104 Stat. 1915, 1959-60 (1990) (codified at 25 U.S.C. § 450f notes) (citations omitted).

   In the present case, the Secretary of the Interior entered into a '638 contract with the Colorado River Indian Tribe for the purpose of administering a Social Services Program. (Defendant's Statement of Facts ("DSOF"), Ex. 5, pp. 32, 50). The contract states, in pertinent part:

> For purposes of FTCA coverage, *the Contractor and it's employees* (including individuals performing personal services contracts with the Contractor to provide health care services) are deemed to be employees of the Federal government *while performing work under this contract*. This status is not changed by the source of the funds used by the Contractor to pay the employee's salary and benefits unless the employee receives additional compensation for performing covered services from anyone other than the Contractor.

(DSOF, Ex. 5, p.32) (emphasis added). Section (a)(1) of the '638 contract, entitled "authority," specifically identifies the Colorado River Indian tribal government or tribal organization as the "Contractor." (DSOF, Ex. 5, p.29 (". . . Colorado River Indian tribal

- 8 -

government or tribal organization (hereinafter referred to as the "Contractor")).  A tribal organization is defined, in pertinent part, as:

> the recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities . . . .

25 U.S.C. § 450b(l); see Demontiney, 255 F.3d 806-07.  However, section (a)(2), entitled "purpose," states:

> Each provision of the [ISDEAA] and each provision of this contract shall be liberally construed for the benefit of the Contractor to transfer the funding and related functions, services, activities, and programs (or portions thereof) . . . including all related administrative functions, from the Federal government to the Contractor: **Social Services Program**.

(DSOF, Ex. 5, p.29) (emphasis in original).  Thus, the question becomes who is the "Contractor" for purposes of FTCA coverage, the Tribe or the Social Services Program.

Defendant contends that FTCA coverage only extends to CRIT Social Services, but not CRIT CPS and its employees who performed Social Services work; thus Defendant argues that the Contractor under the '638 contract is CRIT Social Services.  Plaintiff, on the other hand, contends that the '638 contract applies to any tribal employee that performs social services work, and thus applies, under the circumstances, to the CPS employees that performed work on behalf of, and under the direction of, Social Services.  See Dkt. #68, pp. 3-4 ("[L]iability attaches under the FTCA to tribal employees who are carrying out 638 contracts.").  The Court agrees with Plaintiff.  The '638 contract at issue here specifically identified the Colorado Indian River Tribe, not CRIT Social Services, as the Contractor.  The Court reads section (a)(2) as merely confirming that the purpose of the '638 contract is to transfer the funding and related functions of the Federal Government's social services program to the Tribe so that the Tribe may independently operate a Social Services Program.  In addition, the Court is buyoued in its conclusion by noting that in discussing the Social Services Program to be administered by the Contractor, the '638 contract states that "[t]he Program shall be conducted on and

- 9 -

1 encompassing the Contractor's Reservation . . . ."  (DSOF, Ex. 5, p.50).  Certainly then,
2 the CRIT Social Services entity can not be the Contractor, as the Reservation is not the
3 Social Services's Reservation.  But rather, as the Court now finds, the Contractor must be
4 the Colorado Indian River Tribe itself.

5 As such, "[f]or purposes of FTCA coverage, the [the Tribe] and it's employees . . .
6 are deemed to be employees of the Federal government while performing work under [the
7 '638] contract."  (DSOF, Ex. 5, p.32).  Although, the Tribe created a specific social
8 services entity to carry out the '638 contract, that does not preclude other tribal
9 employees from assisting in the administration of the Tribe's social services program, i.e.,
10 performing work under the '638 contract.  In this case, there is no dispute that CPS
11 performed work that CRIT Social Services was supposed to perform pursuant to the '638
12 contract (Dkt. #76, Defendant's Controverting Statement of Facts ("PCSOF") ¶3); due to
13 understaffing problems at Social Services, CRIT CPS was brought in to assist CRIT
14 Social Services.  The United States was aware of this (DCSOF ¶3).  In addition, the fact
15 that '638 funds were not used to operate CRIT CPS does not negate FTCA liability since
16 "[FTCA] status is not changed by the source of the funds used by the [Tribe] to pay the
17 employee's salary and benefits unless the employee receives additional compensation for
18 performing covered services from anyone other than the [Tribe]."  Therefore, the Court
19 finds that to the extent that CRIT CPS and its employees assisted in carrying out the
20 Tribe's social services program under the '638 contract, as occurred here, CRIT CPS and
21 its employees are employees of the Federal government for purposes of FTCA coverage.

22 In addition, even if the Court found that the Contractor under the '638 contract in
23 question was CRIT Social Services rather than CRIT, the laws of agency dictate the same
24 result.  If CRIT Social Services was the Contractor, then Social Services and its
25 employees would be considered an "employee of the government" for the purpose of
26 FTCA coverage.  (DSOF, Ex. 5, p.32).  An employee of the government includes a
27 governmental servant or agent, as distinguished from an independent contractor, a
28 distinction that turns on "the absence of authority in the principal to control the physical

- 10 -

1  conduct of the contractor in performance of the contract." Logue v. United States, 412
2  U.S. 521, 527 (1973); Necklace v. United States, 2007 WL 3389926, at *6 (D.S.D. 2007)
3  ("The crucial question in this evaluation is the amount of control exercised by the
4  government over the physical performance of the individual."); Ferguson v. United
5  States, 712 F.Supp. 775, 779 (N.D.Cal. 1989) ("Although who qualifies as an employee
6  of the federal government is a question of federal law . . . questions of agency law are
7  determined by state law for FTCA purposes.").
8         "The general rule is that while an employer is liable for the negligence of its
9  employee under the doctrine of *respondeat superior*, an employer is not liable for the
10 negligence of an independent contractor." Wiggs v. City of Phoenix, 198 Ariz. 367, 269
11 (2000) (emphasis in original).  "An agent is an independent contractor, rather than an
12 employee, if the employer or principal exercises no control over and has no right to
13 exercise control over how the agent performs its service." Rand v. Porsche Financial
14 Services, 216 Ariz.App. 424, 431 (2007) (citing Wiggs, 198 Ariz. at 370 (employer
15 instructs independent contractor "on what to do, but not how to do it"); Bible v. First Nat'l
16 Bank of Rawlins, 21 Ariz.App. 54, 56-57 (1973) (independent contractor if "how, when,
17 who, and where" are discretionary)).
18         Here, Defendant does not dispute that  CRIT CPS assisted CRIT Social Services
19 with case management and the placement of children, such as the two minors involved in
20 this case, with foster parents.  (DSOF ¶¶ 6-8).  Indeed, Defendant was aware at the time
21 that CPS was handling foster care cases, and charging '638 funds as a result, on behalf of
22 Social Services.  (DCSOF ¶3).  CRIT Social Services collaborated with CRIT CPS
23 regarding the placement of foster minors, and Social Services could step in at any point
24 that Social Services believed CPS was acting improperly; CPS worked at the direction of
25 Social Services and was answerable to Social Services for placement of the foster minors.
26 (PSOF ¶¶ 9, 28-29).  Although Carolyn DeLeon, a CRIT Social Services employee,
27 testified in her deposition that there were times when CRIT CPS would not listen to her
28 recommendations (DCSOF ¶¶ 9-10, p.5), Janice Patch, who directs CPS's employees,

- 11 -

stated that "[CPS] had to go through Carolyn [of Social Services] to get authorization for any type of placement . . . even if it was an emergency, we had a certain period of time, we had less than 24 hours to notify her and on weekends, after hours it was determined that we would go ahead and authorize placement but let her know in the morning." (Dkt. #79, p.5). Further, the '638 contract at issue here states that it "shall be liberally construed for the benefit of the Contractor to transfer the funding and related functions, services, activities, and programs . . . ." (DSOF Ex. 5, p. 32. (emphasis added)). That is precisely what CRIT Social Services did; Social Services transferred functions of the '638 contract, specifically some case management duties, to CRIT CPS.[1]

CRIT Social Services's authority to control CRIT CPS distinguishes this case from those where a principal-agent relationship was not found. See United States v. Orleans, 425 U.S. 807, 816 (1976) (agents and employees of local community action agency were not federal employees for FTCA purposes because the government "in no sense controlled the detailed physical performance of the group's programs") (citation and internal quotations omitted); Dumansky v. United States, 486 F.Supp. 1078 (D.N.J. 1980) (government not liable under the FTCA for personal injuries sustained on its property unless it has authority to exercise day to day control over the operations of the managers of its property); Wright v. United States, 428 F.Supp. 782 (D.Mont. 1977) (government exercised insufficient control over local, nonprofit corporation to be liable under the FTCA even though the government financed the recreational complex and had retained a reversionary interest in land deeded to the corporation); Hopson v. United States, 136

---

[1] Because the ISDEAA and the '638 contract contemplate that the Colorado River Indian Tribe would administer a social services program on behalf of the Federal Government, the issue is not whether the Bureau of Indian Affairs exercised sufficient control over CRIT CPS, but whether CRIT or CRIT Social Services, exercised control over CPS in a manner consistent with that of a principal-agent relationship. Further, Defendant's citation to the sub-contractor provision in the '638 contract is irrelevant because (1) the Court finds that an agency relationship is established here as opposed to an independent contractor relationship, and (2) the Court reads the sub-contractor provisions as referring to sub-contracts with private entities as opposed to CRIT entities, which is not the case here.

- 12 -

F.Supp. 804 (W.D.Ark. 1956) (government not liable under the FTCA when it merely reserved the right to inspect facilities of private corporation operating ammunition depot). Contrary to the Defendant's assertions, the evidence suggests that CRIT Social Services maintained responsibility for the foster minors in this case and controlled CRIT CPS's decision-making regarding the minors' care and placement. Based on the record presented, the Court finds that CRIT Social Services exercised supervisory control over CPS in a manner consistent with that of a principal-agent relationship. As such, under both the Court's reading of the ISDEAA and the '638 contract, and the principal-agent relationship between CRIT Social Services and CRIT CPS, the Court finds that CPS employees are deemed employees of the United States for purposes of FTCA coverage while performing work under the '638 contract.

**Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. #68) is GRANTED.

DATED this 5th day of September, 2008.

_____
Mary H. Murguia
United States District Judge